I respectfully dissent from the majority opinion for the following reasons:
It is undisputed that plaintiff sustained a compensable injury to her neck and right arm on July 1, 1999 and that defendant admitted liability for plaintiff's right arm injury on a Form 60. Plaintiff initially missed more than three months from work. Plaintiff's doctor again took her out of work on February 22, 2000 due to her injury. She was released to return to work on April 25, 2000, but was restricted to light duty with no repetitive motion of the right hand and no lifting more than one pound with the right upper extremity. Defendant did not have work within these restrictions. Plaintiff was released to return to one-handed work on July 18, 2000, using only her left hand. Plaintiff is right hand dominant.
It is also undisputed that plaintiff suffers from chronic pain of the right upper extremity. Dr. Kern Carlton, Dr. Conti, Dr. Post, Dr. Walsh, Dr. Phillips and Dr. Oswalt all found objective signs that were consistent with Plaintiff's complaints of severe pain in her right upper extremity. Defendant scheduled plaintiff for an evaluation by Dr. Zane Walsh, a physiatrist, on October 3, 2000. Dr. Walsh diagnosed Plaintiff as having chronic pain to the right upper extremity and released her to return to work using her left hand and with the restriction of no continual or repetitive movements.
Defendant is seeking suspension of Plaintiff's compensation because of her refusal to accept work in their "Temporary Alternate Duty" (TAD) program. The TAD program is available only to workers who sustain on-the-job injuries and only during the healing period. Work duties are taken from "real job" positions and assigned to TAD participants based upon each individual's medical restrictions and ability. The TAD program work duties are temporary and "tailor made" to get workers' compensation recipients back to work "doing something." All TAD participants are paid minimum wage, regardless of work duties performed or their prior wage. Since plaintiff earned substantially more than minimum wage and the TAD program work duties are admittedly make work, she would have still been disabled had she accepted the TAD program offer. Also, since the TAD program is temporary, make work, not "suitable employment" and is not even employment; plaintiff's compensation cannot be suspended under N.C. Gen. Stat. § 97-32 for refusal of employment suitable to her capacity.
If the TAD program is not "real employment," not suitable employment, only available to workers who have on-the-job injuries, and only available to workers during the healing period; a refusal of such offer could only suspend or bar compensation if the program is considered "medical compensation" and defendant proves plaintiff refused to cooperate with medical services ordered by the Commission. N.C. Gen. Stat. § 97-2(19) states:
 The term "medical compensation" means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period and the replacement of such artificial members when reasonably necessitated by ordinary use or medical circumstances.
Under this definition, the TAD program comes closer to "employer created" rehabilitative services. N.C. Gen. Stat. § 97-25 provides, however, that:
 The refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure when ordered by the Industrial Commission [emphasis added] shall bar said employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Industrial Commission the circumstances justified the refusal, in which case, the Industrial Commission may order a change in the medical or hospital service.
I agree with the following Conclusions of Law from the Opinion and Award of Deputy Commissioner Gheen:
 5. Food Lion's contention that the TAD employment offered to Russo when released to perform "light duty" work on August 3, 2000, is "suitable employment" is not well taken. N.C. Gen. Stat. § 97-32; Moore v. Concrete Supply Company, ___ N.C. App. ___, 561 S.E.2d 365 (2002). The Food Lion TAD job was a highly modified job and not a position that is available in the competitive labor market. In Peoples v. Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798, (1986) (hereinafter "Peoples"), the North Carolina Supreme Court stated:
 If the proffered employment does not accurately reflect the person's ability to compete with others for wages, it cannot be considered evidence of earning capacity. Proffered employment would not accurately reflect earning capacity if other employers would not hire the employee with the employee's limitations at a comparable wage level.
 Peoples, 316 N.C. at 438, 342 S.E.2d at 806. Russo, who has not reached maximum medical improvement, is limited to employment using her left, non-dominant, arm. The greater weight of the evidence establishes that Russo; given her age, work relevant work history, physical impairments and emotional distress, is totally disabled as of February 22, 2000. N.C. Gen. Stat. § 97-29; Saums v. Raleigh Community Hospital, 346 N.C. 760, 764, 487 S.E.2d 746, 750
(1997) ("Under the Workers' Compensation Act, disability is defined by a diminished capacity to earn wages, not by physical infirmity."); Burwell v. Winn-Dixie Raleigh, Inc., 114 N.C. App. 69, 73-4, 441 S.E.2d 145, 149 (1994) (quoting Trans-State Dredging v. Benefits Review Bd., 731 F.2d 199, 201
(4th Cir. 1984)) ("An employee is `capable of getting' a job if `there exists a reasonable likelihood . . . that he would be hired if he diligently sought the job.'") The fact that Food Lion, in order to accommodate Russo's obvious significant physical restrictions, had to create a position that is not generally available in the competitive labor market is, in itself, some evidence that Russo is incapable of "suitable employment."
6. The legal contention implied in Food Lion's Brief is that Russo, having not reached maximum medical improvement, is required to accept any employment offered because her physician had released her to return to work with restrictions and work within those restrictions is "suitable employment." The contention is not well taken. The definition of "suitable employment" expressed in Peoples is controlling law. N.C. Gen. Stat §§ 97-29, -30 -25 do not expressly provide for a different definition or application of "suitable employment" depending on whether or not a claimant has reached "maximum medical improvement."
 7. The "light duty" or "make shift" employment offered to Russo by Food Lion in its TAD program, however, is both medically therapeutic and rehabilitative. N.C. Gen. Stat. § 97-25. Every physician treating or performing independent medical evaluations of Russo stressed the medical and rehabilitative importance of returning Russo to work and use of the upper right extremity to the maximum extent possible. The Act requires that Russo reasonably participate in all medical treatment and rehabilitative services.
Deputy Commissioner Gheen further concluded and I agree that no Industrial Commission Order has been entered directing plaintiff to participate in Food Lion's TAD program. Tate v. Hayes, 127 N.C. 208,489 S.E.2d 418 (1997). Therefore, plaintiff's compensation should not be suspended or terminated.
Despite all that has been written by the majority herein, the Commission did not order Plaintiff to participate in the TAD program until the decision of the Deputy Commissioner from which Defendant appealed. I would therefore affirm the Opinion and Award of Deputy Commissioner Gheen.
 S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER